Approved: _____
Lindsey Keenan
Assistant United States Attorney

Before:  THE HONORABLE JUDITH C. McCARTHY
United States Magistrate Judge
Southern District of New York

------------------------------------x  19mag 4152

UNITED STATES OF AMERICA         :   SEALED COMPLAINT

         - v. -                  :   Violations of 18 U.S.C.
                                 :   §§ 1951, 924(c)(1), and
                                 :   2
ANTHONY LAURIA,                  :
BRIAN RODRIGUEZ, and             :   COUNTIES OF OFFENSE:
ANTHONY MOLINA,                  :   WESTCHESTER, PUTNAM
                                 :
            Defendants.          :
                                 :
------------------------------------x

SOUTHERN DISTRICT OF NEW YORK, ss.:

JUSTIN M. GRAY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI") and charges as follows:

**COUNT ONE**
(Conspiracy to Commit Hobbs Act Robbery)

1. On or about August 10, 2017, in the Southern District of New York and elsewhere, ANTHONY LAURIA and BRIAN RODRIGUEZ, the defendants, and others known and unknown, unlawfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, LAURIA and RODRIGUEZ conspired to rob a business in New Milford, Connecticut.

(Title 18, United States Code, Section 1951.)

**COUNT TWO**
(Conspiracy to Commit Hobbs Act Robbery)

2.  On or about February 15, 2019, in the Southern District of New York and elsewhere, ANTHONY LAURIA, BRIAN RODRIGUEZ, and ANTHONY MOLINA, the defendants, and others known and unknown, unlawfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, LAURIA, RODRIGUEZ, and MOLINA conspired to rob a business in Mahopac, New York.

(Title 18, United States Code, Section 1951.)

**COUNT THREE**
(Use of a Firearm)

3.  On or about February 15, 2019, in the Southern District of New York and elsewhere, ANTHONY LAURIA, BRIAN RODRIGUEZ, and ANTHONY MOLINA, the defendants, and others known and unknown, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the robbery conspiracy charged in Count Two of this Complaint, knowingly did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, which was brandished during the robbery of a business in Mahopac, New York, and aided and abetted the same.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

4.  I am a Special Agent with the FBI. This affidavit is based on my personal participation in the investigation of this matter, my conversations with other law enforcement agents, witnesses and others, and my review of video recordings, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions,

statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### August 10, 2017, Robbery

5. Based upon my review of surveillance footage from a Verizon Wireless Zone store in New Milford, Connecticut (the "New Milford Store," and the "August 10 Surveillance"), I have learned that at approximately 7:22 p.m. on August 10, 2017, an individual ("CC-1") entered the New Milford Store.

6. Based upon my review of the August 10 Surveillance and a statement made by an employee at the New Milford Store ("Witness-1"), I have learned that CC-1 entered the store, spoke to Witness-1 about purchasing an iPhone, and spent several minutes in the store before leaving without making a purchase. According to Witness-1, CC-1 walked toward a dark sedan parked to the far left when he left the store.

7. Based upon my review of the August 10 Surveillance, I have learned that while CC-1 was in the New Milford store, a dark colored Honda Accord with distinctive rims drove past the door toward the far corner of the parking lot.

8. Based upon my review of the August 10, 2017 Surveillance, I have learned that when CC-1 left the New Milford Store, he walked toward the dark colored Honda Accord with distinctive rims, which then pulled into a parking spot closer to the New Milford Store's entrance.

9. Based upon my review of the August 10, 2017 Surveillance, I have learned that at approximately 7:34 p.m., two individuals ("CC-2" and "CC-3") exited a black sedan and approached the store.[1]

10. Based upon my review of the August 10 Surveillance, and Witness-1's statement, I have learned that at approximately 7:34 p.m., CC-2, who was masked, entered the

---

[1] Based upon my review of the August 10 Surveillance, I believe the black sedan CC-2 and CC-3 exited is the dark colored Honda Accord with distinctive rims. Specifically, a different camera angle shows the dark colored Honda Accord with distinctive rims pulling into the same parking spot from which CC-2 and CC-3 emerge into view.

3

store, brandished a firearm at the nearest store clerk, and zip tied the store clerk's hands.

11. Based upon my review of the August 10 Surveillance, and a statement made by a second clerk from the New Milford Store ("Witness-2"), CC-2 then approached Witness-2. According to Witness-2, CC-2 told Witness-2 to crawl behind a desk, and placed zip ties in front of him. According to Witness-2, he restrained himself with a zip tie.

12. Based upon my review of the August 10 Surveillance, and a statement made by Witness-1, another individual ("CC-3") entered the store after CC-2.

13. Based upon my review of the August 10 Surveillance, Witness-2's statement, and Verizon's property claim, I have learned that CC-2 and CC-3 took 77 Apple iPads and iPhones, valued at approximately $48,000, from the New Milford Store's back room, and loaded them into duffle bags.

14. Based upon my review of the August 10 Surveillance, I have learned that during the course of the robbery, CC-2 disabled many of the New Milford Store's security cameras.

15. Based upon my review of information provided by the Connecticut State Police ("CSP"), I have learned the following about an anonymous tip received by the CSP on January 8, 2018:

    a. Two individuals ("Individual-1" and "Individual-2") entered the CSP Troop F Westbrook barracks, and stated, in substance and in part, that they wanted to provide information about the New Milford Store robbery.

    b. Individual-1 stated, in substance and in part, that he/she watched a video of the New Milford Store robbery that was posted online by the New Milford Police Department ("NMPD"), and identified the robbers as ANTHONY LAURIA, BRIAN RODRIGUEZ, and ANTHONY MOLINA, the defendants.

    c. Individual-1 further stated that RODRIGUEZ and MOLINA live in Yonkers, New York, and provided Instagram account names and phone numbers ending in 3972, 1912, and 9885, for LAURIA, RODRIGUEZ, and MOLINA, respectively.

4

### ANTHONY LAURIA

16. I believe CC-1 is ANTHONY LAURIA, the defendant, for the following reasons:

   a. Based upon my review of a latent print analysis report provided by the State of Connecticut Department of Emergency Services and Public Protection Division of Scientific Services, I have learned that a fingerprint lifted from the door of the New Milford Store on or about August 10, 2017, was compared to fingerprints on file with the New York State Department of State – Licensing Division, and identified to the right thumb print of LAURIA.

   b. I participated in LAURIA'S March 26, 2019, arrest, which was based on a warrant issued by the NMPD. I have compared my personal observation of LAURIA with the individual entering the New Milford Store in the August 10 Surveillance, described in Paragraph 6 above, and I believe they are the same individual.

   c. Based upon my review of a report prepared by the NMPD, I have learned that on or about February 1, 2019, the NMPD interviewed a manager at a security company (the "Manager"). The Manager stated, in substance and in part, that she hired ANTHONY LAURIA, the defendant. The Manager reviewed the August 10 Surveillance, and identified LAURIA as the individual entering the New Milford store at approximately 7:22 p.m. on August 10, 2017.

   d. Based upon my review of records from the New York State Department of Motor Vehicles, I have learned that a black 2017 Honda Accord (the "Honda") is registered to LAURIA'S immediate family member ("Family Member-1").

   e. On or about March 26, 2019, I interviewed Family Member-1, who confirmed that LAURIA is his immediate family member.

   f. Based on my review of records from CLEAR, a law enforcement database, I have learned that LAURIA lives at an address on Sherwood Avenue, in Yonkers, New York (the "Sherwood Avenue Address").

   g. Based on my review of data from license plate readers in Yonkers, New York, I have learned that the Honda's most frequent location is the Sherwood Avenue Address.

   h. I have conducted surveillance at the Sherwood Avenue Address, and I have seen a black Honda Accord with distinctive rims – matching the car seen on the August 10 Surveillance described above – parked outside.

   i. I participated in LAURIA's March 26, 2019, arrest, and I am aware that he was in possession of the telephone assigned a call number ending in 3972 (the "Lauria Phone") at the time of his arrest.

   j. Based upon my review of records provided by Sprint, I have learned that the Lauria Phone has been subscribed to in LAURIA's name since approximately January 2010.

   k. Based upon my review of records provided by Sprint, I have also learned that during the month of August 2017, the Lauria Phone was used in and around Yonkers, New York, except that on or about August 10, 2017 – the day of the New Milford Store robbery – the Lauria Phone was used in New Milford, Connecticut.

   l. Based upon my review of cellsite records provided by Sprint, I have learned that on or about August 10, 2017, the Lauria Phone traveled north from Yonkers, New York at approximately 3:24 p.m., accessing cell towers in Elmsford, and South Salem, New York, before accessing the closest cell tower to the New Milford Store at approximately 7:15 p.m. and 7:51 p.m., close in time to the New Milford Store Robbery. After 7:51 p.m., the Lauria Phone had a break in cellsite activity. At approximately 10:31 p.m., the Lauria Phone accessed a cell tower back in Yonkers, New York, where LAURIA lives.

### BRIAN RODRIGUEZ

  17. I believe CC-3 is BRIAN RODRIGUEZ, the defendant, for the following reasons:

   a. I have compared my observation of CC-3 from the August 10 Surveillance with photographs of RODRIGUEZ from law enforcement databases. RODRIGUEZ and the individual depicted in the August 10 Surveillance have the same build, skin tone, and facial hair.

   b. I have reviewed a post-arrest statement made by ANTHONY LAURIA, the defendant, on or about March 26, 2019.

6

LAURIA stated, in substance and in part, that he has been friends with RODRIGUEZ for years.

   c. Based upon my review of records provided by AT&T, I have learned that a phone assigned a call number ending in 1912 (the "Rodriguez Phone"), has been subscribed to in RODRIGUEZ's name since approximately October 2016.

   d. Based upon my review of records from CLEAR, a law enforcement database, I have learned that RODRIGUEZ lives at an address on Alexander Avenue, in Yonkers, New York (the "Alexander Avenue Address").

   e. On or about April 25, 2019, I conducted surveillance at the Alexander Avenue Address, and observed an individual matching RODRIGUEZ's description exit the residence. I called the Rodriguez Phone, and watched as the individual matching Rodriguez's description picked up the phone. Through the receiver of my own phone, I heard the individual say, "hello."

   f. Based on my review of records provided by AT&T, I have learned that in the month of August 2017, the Rodriguez Phone was used in New York, except that on August 10, 2017, the Rodriguez Phone was used in New Milford, Connecticut.

   g. Based upon my review of cellsite records provided by AT&T, I have learned that on or about August 10, 2017, the Rodriguez Phone traveled north from Yonkers, New York, at approximately 4:30 p.m., accessing cell towers in Bedford and Yorktown Heights, New York, before accessing a cell tower less than two miles from the New Milford Store at approximately 7:15 p.m. After 7:15 p.m., the Rodriguez Phone had a break in cellsite activity. At approximately 9:55 p.m., the Rodriguez Phone accessed a cell tower back in Yonkers, New York, where RODRIGUEZ lives.

   h. Call detail records provided by AT&T reflect that on August 10, 2017, the Rodriguez Phone made and received calls to the Lauria Phone at 4:40 p.m., 4:41 p.m., 7:15 p.m., 10:31 p.m., and 10:31 p.m.

### February 15, 2019, Robbery

   18. Based on my review of surveillance footage provided by a Verizon Wireless Zone Store in Mahopac, New York Store (the "Mahopac Store") and, and the business adjacent to

7

the Mahopac Store (the "February 15 Surveillance"), I have learned that on February 15, 2019, at approximately 7:40 p.m., a dark colored Honda Accord with distinctive rims pulled into the Mahopac Store's parking lot, turned around near the Mahopac Store, and idled in front of the Mahopac Store.

19. Based upon my review of the February 15 Surveillance as well as my review of a statement made by a clerk in the Mahopac Store ("Witness-3"), I have learned that at approximately 7:45 p.m., on February 15, 2019, a masked individual entered the store, brandished a firearm at the store clerk, and zip tied the store clerk's hands.

20. Based upon my review of the February 15 Surveillance and Witness-3's statement, I have learned that a second individual, wearing a hat, hood, and sunglasses, entered the store next, with a red duffle bag.

21. Based upon my review of the February 15 Surveillance and an affidavit of lost property from the Carmel Police Department, I have learned that the individuals took Apple iPhones and other electronic devices valued at approximately $54,000 from the Mahopac Store's safes, and loaded them into a red duffle bag.

22. Based upon my review of the February 15 Surveillance, I have learned that during the course of the robbery, one of the robbers disabled many of the Mahopac Store's security cameras.

23. Based upon my review of Witness-3's statement, I have learned that during the course of the robbery, one of the robbers called the other robber "Brian" multiple times.

24. I believe ANTHONY LAURIA and BRIAN RODRIGUEZ, the defendants, participated in the Mahopac Store robbery for the following reasons:

    a. Based upon my review of the August 10 Surveillance and the February 15 Surveillance, I have learned that each of the robberies took place at Verizon Wireless Zone store near closing time, when foot traffic was at a minimum.

    b. Based upon my review of the August 10 Surveillance and the February 15 Surveillance, a dark colored Honda Accord with distinctive rims arrived minutes before each of the robberies took place.

c. Based upon my review of the August 10 Surveillance, the February 15 Surveillance, and the statements of Witness-1, Witness-2, and Witness-3, in each of the robberies, two individuals entered the store.

d. Based upon my review of the August 10 Surveillance, the February 15 Surveillance, and the statements of Witness-1, Witness-2, and Witness-3, in each of the robberies, one of the individuals was masked, and brandished a firearm.

e. Based upon my review of the August 10 Surveillance, the February 15 Surveillance, and the statements of Witness-1, Witness-2, and Witness-3, in each of the robberies the store clerks were restrained with zip ties.

f. Based upon my review of the August 10 Surveillance and the February 15 Surveillance, in each of the robberies, one of the robbers disabled the store's security cameras.

g. I have compared my observation of the second individual who entered the Mahopac Store, described in Paragraph 20 above, as depicted in the February 15 Surveillance, with photographs of RODRIGUEZ from law enforcement databases. RORDRIGUEZ and the individual depicted in the February 15 Surveillance have the same build, skin tone, and facial hair.

h. I have compared my observation of the second individual who entered the Mahopac Store, described in Paragraph 20 above, as depicted in the February 15 Surveillance, with my observation of CC-3 from the August 10 Surveillance. CC-3 and the individual depicted in the February 15 Surveillance have the same build, skin tone, and facial hair.

i. Based upon my review of Witness-3's statement, I have learned that during the course of the Mahopac Store Robbery, one of the robbers repeatedly referred to the other as "Brian."

j. Based upon my review of records provided by Sprint, I have learned that during the month of February 2019, February 15, 2019, is the only date on which the Lauria Phone was used in Mahopac, New York.

    k. Based upon my review of records provided by AT&T, I have learned that during the month of February 2019, February 15, 2019, is the only date on which the Rodriguez Phone was used in Mahopac, New York.

    l. Based upon my review of cellsite records provided by Sprint, I have learned that on or about February 15, 2019, the Lauria Phone traveled north from Yonkers, New York at approximately 6:30 p.m., accessing cell towers in White Plains, and Pleasantville, New York, before accessing the closest cell tower to the Mahopac Store at approximately 7:01 p.m., 7:04 p.m., and 8:07 p.m. At approximately 8:30 p.m., the Lauria Phone accessed a cell tower back in Yonkers, New York, where LAURIA lives.

    m. Based upon my review of cellsite records provided by AT&T, I have learned that on or about February 15, 2019, the Rodriguez Phone traveled north from Yonkers, New York, at approximately 6:33 p.m., accessing cell towers in Valhalla and Briarcliff, New York, before accessing the closest cell tower to the Mahopac Store at approximately 7:04 p.m. and 7:11 p.m. At approximately 8:30 p.m., the Rodriguez Phone accessed a cell tower back in Yonkers, New York, where RODRIGUEZ lives.

    n. Based upon my review of call detail records provided by AT&T, I have learned that on or about February 15, 2019, the Rodriguez Phone made and received calls to the Lauria Phone at 4:11 p.m., 4:45 p.m., 5:40 p.m., 6:04 p.m., 7:30 p.m., 7:36 p.m., and 7:36 p.m.

### ANTHONY MOLINA

25. I believe ANTHONY MOLINA, the defendant, participated in the February 15, 2019, Mahopac Store robbery with ANTHONY LAURIA and BRIAN RODRIGUEZ, the defendants, for the following reasons:

    a. I have reviewed a post-arrest statement made by ANTHONY LAURIA, the defendant, on or about March 26, 2019. LAURIA stated, in substance and in part, that he knows MOLINA.

    b. Based upon my review of publicly available Facebook records, I have learned that BRIAN RODRIGUEZ, the defendant, is Facebook friends with ANTHOY MOLINA, the defendant.

   c. Based on my review of cell tower log information from AT&T, Sprint, T-Mobile, Metro PCS, and Verizon, for February 15, 2019, I have learned that on February 15, 2019, the Lauria Phone and the Rodriguez Phone were in the vicinity of the Mahopac Store. I have also learned that on February 15, 2019, the Lauria Phone and the Rodriguez Phone were in contact with each other, and each were in contact with a third phone, assigned a call number ending in 2454 (the "Molina Phone").

   d. I believe the Molina Phone is used by MOLINA for the following reasons:

    i. Based on my review of records from CLEAR, a law enforcement database, I have learned that the Molina Phone is associated with a business called ASA Corner Stone Builders Corp. ("ASA Cornerstone").

    ii. Based on my review of publicly available Facebook records, I have learned that MOLINA uses the Instagram account "Chill_Primo."

    iii. Based upon my review of publicly available Instagram records, I have learned that the user of the Chill_Primo Instagram account works for ASA Cornerstone.

    iv. Based upon my review of call detail records provided by T-Mobile, I have learned that the most common calls on the Molina Phone are to individuals identified on publicly available Facebook records as MOLINA's friends and family.

    v. Based upon my review of records from CLEAR, a law enforcement database, I have learned that MOLINA lives at an address on Park Avenue, in Yonkers, New York (the "Park Avenue Address").

    vi. On or about April 27, 2019, I conducted surveillance at the Park Avenue Address, and observed a car pull into the driveway. An individual matching MOLINA's description got out of the car and walked toward the house. I called the Molina Phone, and through the receiver of my own phone, I heard a male voice say, "hello" several times. Another law enforcement officer, with whom I was conducting surveillance, observed that at the time I placed the phone call, the individual matching MOLINA's description put what appeared to be a cellphone to his ear and spoke into it.

     e. Based upon my review of records provided by T-Mobile, I have learned that during the month of February 2019, February 15, 2019 – the day of the Mahopac Store robbery – is the only date on which the Molina Phone was used in Mahopac, New York.

     f. Based upon my review of Cellsite records provided by T-Mobile, I have learned that on or about February 15, 2019, the Molina Phone traveled north from Yonkers, New York at approximately 6:30 p.m., accessing a cell tower in Elmsford, New York, before accessing the closest cell tower to the Mahopac Store at approximately 7:00 p.m. and 7:13 p.m. At approximately 9:13 p.m., the Molina Phone accessed a cell tower back in Yonkers, New York, where MOLINA lives.

     g. Based upon my review of cellsite records provided by Sprint, AT&T, and T-Mobile, I have learned that February 15, 2019, the Molina phone followed the same travel pattern as the Lauria Phone and the Rodriguez Phone.

     h. Based upon my review of call detail records provided by T-Mobile, I have learned that on February 15, 2019, the Molina Phone made calls to the Lauria Phone at 5:30 p.m., and 6:00 p.m.

     i. Based upon my review of call detail records provided by T-Mobile, I have learned that on February 15, 2019, the Molina Phone made or received calls to the Rodriguez Phone at 4:14 p.m., 5:05 p.m., and 5:06 p.m.

     j. Based upon my review of records provided by Sprint, AT&T, and T-Mobile, I have learned that on February 15, 2019, the Lauria Phone, Rodriguez Phone, and Molina Phone did not make any calls between 7:36 p.m. and 8:07 p.m., during which time frame the Mahopac Store was robbed.

WHEREFORE, deponent prays that a warrant be issued for the arrest of ANTHONY LAURIA, BRIAN RODRIGUEZ, and ANTHONY MOLINA, the defendants, and that they be arrested and imprisoned, or bailed, as the case may be.

_____
Justin M. Gray
Special Agent
Federal Bureau of Investigation

Sworn to before me this
29th day of April, 2019

_____
THE HONORABLE JUDITH C. McCARTHY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK